Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

### FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued November 17, 2003      Decided March 5, 2004

No. 03-3022

UNITED STATES OF AMERICA,
APPELLEE

v.

GERALD F. WHITMORE,
APPELLANT

———

Appeal from the United States District Court
for the District of Columbia
(No. 02cr00269–01)

———

*A. J. Kramer*, Federal Public Defender, argued the cause for the appellant. *Erica J. Hashimoto*, Assistant Federal Public Defender, entered an appearance.

*Jessie K. Liu*, Assistant United States Attorney, argued the cause for the appellee. *Roscoe C. Howard, Jr.*, United States Attorney, and *John R. Fisher* and *Thomas J. Tourish, Jr.*, Assistant United States Attorneys, were on brief.

———

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

Before: HENDERSON and GARLAND, *Circuit Judges*, and SILBERMAN, *Senior Circuit Judge*.*

Opinion for the court filed by *Circuit Judge* HENDERSON.

KAREN LeCRAFT HENDERSON, *Circuit Judge*: Gerald F. Whitmore was convicted by a jury on firearm and drug charges. He appeals the firearm conviction on the ground that the district court committed reversible error in preventing him at trial from attacking the credibility of the arresting officer. Whitmore also claims that the court erred at sentencing in concluding that his prior conviction constituted a "crime of violence" within the meaning of the United States Sentencing Guidelines (U.S.S.G.). We conclude that the district court erred in prohibiting Whitmore from cross-examining the officer about certain instances of past conduct under Fed. R. Evid. 608(b). In doing so, the court deprived Whitmore of any realistic opportunity to challenge the credibility of the only witness who testified that Whitmore committed the firearm offense. That error was not harmless. We therefore reverse Whitmore's firearm conviction and remand for a new trial on that charge. Because of this holding, we do not reach Whitmore's sentencing claim.

## I. BACKGROUND

On June 20, 2002, Whitmore was charged with one count of unlawful possession of a firearm and ammunition by a felon, in violation of 18 U.S.C. § 922(g)(1), and simple possession of a controlled substance (cocaine base), in violation of 21 U.S.C. § 844(a). On November 5, 2002, a jury convicted him on both counts. On January 31, 2003, the district court sentenced Whitmore to concurrent prison terms of 83 months on the firearm count and 12 months on the drug possession count, followed by a three-year term of supervised release.

Viewed in the light most favorable to the government, *see United States v. Graham*, 83 F.3d 1466, 1470 (D.C. Cir. 1998), the evidence at trial established that on the evening of

---

* Judge Silberman was a member of the panel at the time of oral argument but did not participate in the decision.

November 1, 2001, Officer Bladden Russell of the District of Columbia Metropolitan Police Department (MPD), while patrolling the Fort Davis neighborhood in Southeast Washington, directed a crowd gathered at a bus stop to disperse. The crowd, with the exception of Whitmore, complied. Russell exited his car to approach Whitmore and Whitmore fled. Russell pursued him on foot and noticed that Whitmore, while running, held his right hand close to his body at his waist and the right side pocket of his jacket.

Whitmore successfully eluded Russell but MPD Officer Efrain Soto, Jr., who was also patrolling the neighborhood in his police cruiser, spotted Whitmore and gave chase, first in his car and then on foot. Soto also noticed Whitmore's right hand holding the right side of his jacket. While still in the cruiser, Soto saw Whitmore throw a gun towards an apartment building next to an alley Whitmore ran into. Shortly thereafter, Soto apprehended Whitmore. Once Russell caught up to assist, Soto found a gun in a window well of the apartment building. The weapon (with four rounds of ammunition, one of which was chambered) showed signs that it had been recently thrown against the building: a piece of brick was stuck in its sight, there were scuff marks on it and it was covered with masonry dust. The police found nothing in the right pocket of Whitmore's jacket but did discover a small bag of cocaine base in his left pocket.

At trial Whitmore defended on the ground that Soto had fabricated the story about the gun and had planted the gun in the window well. Soto provided, almost exclusively,[1] the evidence connecting Whitmore to the gun and Whitmore therefore sought to attack Soto's credibility in several ways. He first attempted to call three defense witnesses – Jason Cherkis, Bruce Cooper and Kennith Edmonds – to testify regarding Soto's "character for truthfulness" under Fed. R. Evid. 608(a). Cherkis, a reporter with the *City Paper*, wrote an article in January 2000 reporting that Soto and three other

---

[1] Although Officer Russell testified that Whitmore held his right hand close to his right side as he fled, Russell did not see him throw anything.

MPD officers were the target of multiple complaints from residents of the MPD's Sixth District, the district in which Whitmore was arrested. According to Whitmore, Cherkis would testify, based on conversations he had with his sources for the article, that Soto had a reputation as a liar. Cherkis moved to quash Whitmore's subpoena on grounds of the First Amendment and the District's reporter shield law. D.C. Code Ann. §§ 16–4701 *et seq.* Before trial, the court excluded Cherkis's testimony under Fed. R. Evid. 608(a) because Cherkis was not personally acquainted with Soto and because the foundation of Cherkis's testimony – interviews that he conducted for the 2000 article – was too remote in time to be relevant. Appellee's App. at 26–28.

Bruce Cooper was a local criminal defense counsel who, Whitmore claimed, would testify regarding both Soto's reputation for untruthfulness within what he called the "court community" and Cooper's own opinion that Soto was untruthful. Whitmore proffered that Cooper would testify that several defense counsel thought Soto was a liar and that Cooper had the same opinion based on having tried many cases in which Soto was a government witness. The district court excluded Cooper's reputation testimony because, even assuming the "court community" constituted a recognized community, Cooper did not know Soto's reputation within the entire "court community" and did not live in Soto's neighborhood. The court also rejected Cooper's opinion testimony under Fed. R. Evid. 403 because it was "inherently biased," Appellee's App. at 359, and unduly prejudicial in that Cooper's contacts with Soto arose from his representation of criminal defendants against whom Soto testified and because Cooper's testimony would lead to additional delay – that is, the court would have to allow the government to explore the circumstances underlying Soto's testimony in the other cases about which Cooper intended to testify.

Kennith Edmonds, whom Whitmore also sought to call as both a reputation and opinion witness, was an acquaintance of Soto who used to live in the neighborhood where Soto worked and who saw Soto regularly until roughly five years before the trial, when Edmonds moved away. Whitmore proffered

that Edmonds would say that he still saw Soto a few times each week when Edmonds returned to his old neighborhood to visit his mother and still maintained contacts with others in the neighborhood who knew Soto. Edmonds's proffered opinion evidence was based on two incidents: (1) Soto had participated in the arrest of a friend of his and, when Edmonds attempted to collect his friend's property from the police, Edmonds was told that there was no property to collect; and (2) Soto and other officers wrongly arrested Edmonds for drug possession in 1995. The court excluded Edmonds's reputation testimony because he had not lived in the neighborhood where Soto worked for some time; it excluded his opinion testimony because it questioned whether Soto was involved in the events on which Edmonds based his opinion. It also excluded Edmonds's testimony in its entirety under Fed. R. Evid. 403, concluding that the minimal probative value of Edmonds's evidence was outweighed by unfair prejudice, including the government's resulting need to examine the events underlying Edmonds's testimony.

In addition to these three character witnesses, Whitmore also sought to impeach Soto by cross-examining him on three subjects: (1) a D.C. Superior Court judge's finding that Soto had lied when Soto testified before him in a 1999 criminal trial; (2) the suspension of Soto's driver's license and Soto's failure to report the suspension to his supervisors; and (3) Soto's failure to pay child support. Regarding the first, the Superior Court judge had rejected Soto's testimony that he had seen a bag of drugs with a blue line in the defendant's hand. The judge found that testimony "palpably incredible," Appellant's App. at 73, and concluded that "Officer Soto lied." *Id.* at 79. The judge therefore granted the defendant's motion for acquittal. The U.S. Attorney's Office subsequently investigated Soto for perjury but declined to prosecute him. It did, however, put Soto on a "*Lewis* list," a watch list for officers under investigation. *See United States v. Bowie*, 198 F.3d 905, 908 (D.C. Cir. 1999) (describing *Lewis* list established after *Lewis v. United States*, 408 A.2d 303, 306 (D.C. 1979)).

The government moved *in limine* to exclude cross-examination on the subject under Fed. R. Evid. 608(b) as well as Fed. R. Evid. 403, contending that the judge's finding was only an allegation of misconduct and therefore not probative of Soto's truthfulness and, in any event, was unfairly prejudicial. Whitmore argued for its admissibility as a specific instance of misconduct under Fed. R. Evid. 608(b) and as "motive" evidence under Fed. R. Evid. 404(b). According to Whitmore, Soto had reason to lie in Whitmore's case in order to curry favor with the government and rehabilitate himself following the local judge's finding. The district court disagreed and barred cross-examination under Fed. R. Evid. 403, noting that the finding was not a perjury *conviction*, that the present jury might rely too heavily on the finding in making its own credibility determination regarding Soto and, finally, that any cross-examination would delay the trial and could confuse the jury because the government would have to be given the opportunity to explore the finding before the jury.

Whitmore's other attempted impeachment matters involved the alleged suspension of Soto's driver's license and his alleged failure to pay child support. Whitmore sought to cross-examine Soto from a state document manifesting that Soto's Maryland driver's license had been suspended from 1998 to 2000 for failure to pay child support. Appellant's App. at 107. MPD regulations require all officers to maintain a valid driver's license and to notify their supervisor of any change in status. *Id.* at 110. Whitmore invoked both Fed. R. Evid. 608(b) and Fed. R. Evid. 404(b) in support of cross-examination on these subjects: (1) under Fed. R. Evid. 608(b), Soto's alleged failure to report his suspended license and to make child support payments would reveal his inclination to dissemble and evade the law; and (2) under Fed. R. Evid. 404(b), Soto's conduct gave him a motive to lie about Whitmore and the gun in order to secure a conviction in case his supervisor discovered his suspended license. The district court prohibited cross-examination on both subjects, concluding the document Whitmore intended to cross-examine from was hearsay and observing that it "d[id]n't understand" Whit-

more's "bias argument." Oct. 31, 2002 Trial Tr. (Tr.) at 232–234.

In light of the trial court's rulings, Whitmore presented no evidence in his defense and was limited to cross-examining the government witnesses about inconsistencies in their trial testimony. The jury convicted Whitmore on both counts. At sentencing the court concluded that Whitmore's prior Maryland conviction for aggravated assault constituted a "crime of violence" as defined in U.S.S.G. § 4B1.2(a) and therefore calculated Whitmore's base offense level pursuant to U.S.S.G. § 2K2.1(a)(2). It sentenced Whitmore to concurrent prison terms of 83 months on the firearm count and 12 months on the drug possession count, followed by a three-year term of supervised release.

## II. DISCUSSION

The Sixth Amendment guarantees a defendant the right to present a defense by calling witnesses on his own behalf and by cross-examining the witnesses against him. *See Taylor v. Illinois*, 484 U.S. 400, 409 (1988); *Delaware v. Van Arsdall*, 475 U.S. 675, 678–79 (1986); *Chambers v. Mississippi*, 410 U.S. 284, 294–95 (1973); *United States v. Wilson*, 160 F.3d 732, 742 (D.C. Cir. 1998); *Graham*, 83 F.3d at 1474. The district court nonetheless has considerable discretion to place reasonable limits on a criminal defendant's presentation of evidence and cross-examination of government witnesses. *Wilson*, 160 F.3d at 742; *Graham*, 83 F.3d at 1474. It must "be cautious," however, "[p]articularly where a party is seeking to impeach a witness whose credibility could have an important influence on the outcome of the trial." *Harbor Ins. Co. v. Schnabel Found. Co.*, 946 F.2d 930, 935 (D.C. Cir. 1991).

Whitmore makes two challenges: one related to the exclusion of his proposed character witnesses under Fed. R. Evid. 608(a) and the other to the exclusion of his proposed cross-examination of Soto under Fed. R. Evid. 608(b). We review the district court's evidentiary rulings for abuse of discretion, *see Wilson*, 160 F.3d at 742 ("review[ing] the district court's

decision to deny admission of evidence for abuse of discretion"); *United States v. White*, 116 F.3d 903, 919 (D.C. Cir. 1997) ("[r]eviewing the district court's limits on cross-examination for abuse of discretion"), and address his claims separately.

1. Character Witnesses

Fed. R. Evid. 608(a) allows a party to attack the credibility of a witness through reputation and opinion evidence of his character for truthfulness.[2]  Whitmore complains that the district court erroneously excluded the testimony of three character witnesses he sought to call to attack Soto's credibility.  As noted earlier, they included: (1) Cherkis, a reporter who had written a newspaper article involving Soto in 2000; (2) Cooper, a local defense counsel who had represented defendants against whom Soto had testified;  and (3) Edmonds, an acquaintance who had lived in the neighborhood where Soto worked.  Whitmore wanted Cherkis to provide reputation evidence and Cooper and Edmonds both reputation and opinion evidence.

In order to offer reputation evidence under Fed. R. Evid. 608(a), a party must establish that the character witness is qualified by having an "acquaintance with [the witness]," his "community," and "the circles in which he has moved, as to speak with authority of the terms in which generally [the witness] is regarded." *Michelson v. United States*, 335 U.S. 469, 478 (1948); *compare United States v. Bedonie*, 913 F.2d 782, 802 (10th Cir. 1990) (high school principal qualified to give reputation testimony because he lived in community, regularly used local facilities and personally knew and had frequent contact with witnesses), *with United States v. Ruiz–*

---

[2] Fed. R. Evid. 608(a) provides:

The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness, and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.

*Castro*, 92 F.3d 1519, 1530 (10th Cir. 1996) ("[d]efendants did not establish requisite . . . foundation in order to offer reputation evidence" because sole connection was that character witnesses and principal witness were all from Mexico). With regard to Cherkis, Whitmore relied on the interviews that Cherkis had conducted for the 2000 article and on the holding in *Wilson v. City of Chicago*, 6 F.3d 1233, 1239 (7th Cir. 1993), in which the Seventh Circuit reversed a district court's exclusion of a reporter's reputation testimony. The reporter in *Wilson*, however, had personally interviewed the principal witness while Cherkis had never met Soto. *Id., see Ruiz–Castro*, 92 F.3d at 1530 (character witnesses not qualified because not "personally familiar with [the principal witness] or his alleged reputation"). Furthermore, neither Cherkis nor Edmonds had had direct contact with Soto or his community for some time. The district court found the proposed testimony of both Cherkis and Edmonds as to Soto's alleged reputation for truthfulness "too remote" in time from the time of trial. Appellee's App. at 27, 351; *see United States v. Watson*, 669 F.2d 1374, 1381 (11th Cir. 1982) (reputation witness not qualified where he knew witness only "for a short period of time" and his "testimony was to a reputation that existed at a time remote from both the time of [the events in controversy] and the time of trial"); *United States v. Lewis*, 482 F.2d 632, 640 n.44 (D.C. Cir. 1973) (witness's "reputation for testimonial honesty . . . is to be established by evidence of his community reputation at the time of trial and during a period not remote thereto"). Finally, with regard to Cooper's testimony – and leaving aside the troublesome issue whether the "court community" represents a cognizable community for the purpose of a law enforcement officer's reputation – the district court found the foundation for his testimony weak because it relied on Cooper's conversations with only a few other criminal defense counsel, a subset of the proposed "community." *See Williams v. United States*, 168 U.S. 382, 397 (1897) (reputation evidence inadmissible because foundation was few individuals in one building and Court noted community cannot be so narrowly drawn as to ignore "general reputation in the community"); *United States v. Nedza*,

880 F.2d 896, 904 (7th Cir. 1989) (rejecting reputation testimony because only foundation was two former high school classmates' conversations); *see also* 28 Charles Alan Wright & Victor James Gold, Federal Practice and Procedure § 6114, at 63 (1993) ("The community must not be so parochial that there is a risk that each member of that community forms opinions as to character based on the same set of biases."). We conclude that the district court did not abuse its discretion in excluding the reputation evidence of these witnesses.[3]

While recognizing that the foundational requirement for *opinion* evidence regarding a witness's character for truthfulness is less stringent than that for *reputation* evidence, *see Watson*, 669 F.2d at 1382, the district court nonetheless rejected both Cooper's and Edmonds's proposed opinion evidence. It concluded that both opinions lacked sufficiently supportive factual information to be credible and thus would be unfairly prejudicial under Fed. R. Evid. 403. Appellee's App. at 359–361. *Compare United States v. McMurray*, 20 F.3d 831, 834 (8th Cir. 1994) (finding adequate foundation for opinion testimony because witness convinced character witness to open credit card account ostensibly to buy Christmas presents but instead incurred sizable travel expenses character witness had to pay), *with United States v. Cortez*, 935 F.2d 135, 139–40 (8th Cir. 1991) (rejecting opinion testimony by police officers because officers had only minimal, post-

---

[3] The district court also excluded Cherkis's and Cooper's testimony because neither lived in Soto's community. Courts have rejected the notion, however, that reputation testimony is confined to the witness's residential community or that the character witness must physically reside in that community. *See, e.g.*, *Wilson*, 6 F.3d at 1239 (admitting reporter's testimony about witness's reputation among people with whom he had worked and among his family because "a community doesn't have to be stable in order to qualify under the rule"); *United States v. Mandel*, 591 F.2d 1347, 1370 (4th Cir. 1979) (noting that expansion of community to include witness's professional environment reflects "the realities of our modern, mobile, impersonal society"); *United States v. Lewin*, 467 F.2d 1132, 1140 (7th Cir. 1972) (rejecting notion that "an identity of residence is essential" for reputation testimony).

arrest contacts with witness and their testimony "merely expresses their belief in the story he told them"). The foundation for Cooper's opinion that Soto was untruthful was limited to his observation that Soto had testified falsely against his clients; the facts underlying Edmonds's opinion did not provide a reasonable basis from which the jury could conclude that Soto was even directly involved in the events, much less indicate that he was untruthful about them. *United States v. Dotson*, 799 F.2d 189, 193 (5th Cir. 1986) ("An opinion . . . without the underlying facts, may be excluded if it amounts to no more than a conclusory observation. . . . Unless that basis or source demonstrates that the opinion is *rationally* based on the perception of the witness and would be helpful to the jury in determining the fact of credibility, it should not become a part of the proof in the case." (emphasis added)).

Whitmore contends that the foundational defects could have been highlighted by the government in cross-examining his character witnesses but were not severe enough to exclude the evidence altogether. *See Watson*, 669 F.2d at 1382. The foundation required by Fed. R. Evid. 608(a), however, is designed to keep unreliable evidence from being heard by the jury at all. *See, e.g.*, Fed. R. Evid. 701 (opinion must be "rationally based on the perception of the witness" and "helpful to a clear understanding of the witness' testimony or the determination of a fact in issue"); *United States v. Williams*, 212 F.3d 1305, 1309–10 & n.6 (D.C. Cir. 2000); *Giant Food Stores, Inc. v. Fine*, 269 F.2d 542, 543 (D.C. Cir. 1959) (per curiam). The district court did not abuse its discretion in excluding this evidence under Fed. R. Evid. 608 – the foundational defects *were* serious – and Fed. R. Evid. 403, on the ground that its value would have been substantially outweighed by the unfair prejudice to the government and by needlessly occupying the time of the jury and the court.

2. Cross–Examination of Soto

Fed. R. Evid. 608(b) allows a party to attack the credibility of a witness by cross-examining him on specific instances of

past conduct.[4]  Cross-examination pursuant to Fed. R. Evid. 608(b) is not confined to prior criminal convictions – they are governed by Fed. R. Evid. 609 – but the conduct must be probative of the witness's character for truthfulness.  *See* Fed. R. Evid. 608(b).  It may not, however, be proven by extrinsic evidence.  *Id.*;  *United States v. Morrison*, 98 F.3d 619, 628 (D.C. Cir. 1996);  s*ee also United States v. Bynum*, 3 F.3d 769, 772 (4th Cir. 1993) (noting that under Fed. R. Evid. 608(b) "cross-examiner may inquire into specific incidents of conduct, but does so at the peril of not being able to rebut the witness'[s] denials" and that "[t]he purpose of this rule is to prohibit things from getting too far afield – to prevent the proverbial trial within a trial").

Whitmore contends that the district court erroneously prevented him from cross-examining Soto under Fed. R. Evid. 608(b) regarding three instances of past misconduct:  (1) his testimony before the Superior Court judge in 1999;  (2) the 1998 suspension of Soto's Maryland driver's license and his failure to report the suspension to his supervisors;  and (3) Soto's failure to make child-support payments.[5]  The district court prohibited cross-examination as to the first instance under Fed. R. Evid. 403;  with regard to Soto's failure to

[4] Fed. R. Evid. 608(b) provides:

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness'[s]character for truthfulness, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence.  They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness'[s] character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

[5] Whitmore also asserts that cross-examination on these subjects was permissible under Fed. R. Evid. 404(b) to show that Soto had a motive to lie in Whitmore's trial to curry favor with (or avoid future investigation by) his MPD supervisors.  Because we conclude that reversal is required for the reasons discussed in the text, we need not address this assertion.

report his suspended license and his failure to make child support payments, the court concluded that the document on which Whitmore relied to pursue the questioning was itself unreliable hearsay. We disagree.[6]

Under Fed. R. Evid. 403, a court may exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." "Rule 403 tilts," however, "as do the rules as a whole, toward the admission of evidence in close cases;" when "performing the balancing test required under Rule 403, . . . the balance should be generally struck in favor of admission." *United States v. Cassell*, 292 F.3d 788, 795 (D.C. Cir. 2003) (internal quotations and citations omitted). We nonetheless recognize that the district court is in the best position to conduct the balancing test and therefore review a Fed. R. Evid. 403 ruling "only for grave abuse." *Id.* (internal quotations and citations omitted).

Here the district court first determined that the probative value of any cross-examination regarding Soto's testimony before the Superior Court judge would be slight because it involved an unrelated and dated matter and fell short of a perjury conviction. It then concluded, relying in part on *United States v. Lopez*, 944 F.2d 33, 38 (1st Cir. 1991) (no abuse of discretion in prohibiting cross-examination about prior judicial finding), that cross-examination on the subject presented a "grave risk that the jury might abdicate" its role in weighing Soto's testimony and that both the cross-examination and the government's inevitable rehabilitation of Soto's testimony would "divert the jury from the facts in this case and from the assessment that they need to make in this case." Appellee's App. at 185–86.

---

[6] The district court did not conclude, and the government does not argue, that the proposed cross-examination would be impermissible under Fed. R. Evid. 608. Rather, the government argues only that it was within the district court's discretion to exclude this line of cross-examination.

For his part, Whitmore contends that the proposed cross-examination was strongly probative of Soto's character for untruthfulness and that, given the critical nature of Soto's evidence against Whitmore, the district court should have allowed it. We agree. Nothing could be more probative of a witness's character for untruthfulness than evidence that the witness has previously lied under oath. Indeed, as the Second Circuit observed – in a remarkably similar case (before the enactment of Fed. R. Evid. 608(b)) in which a party sought to cross-examine a "key witness" regarding a finding by another court that the witness had " 'intentionally g[iven] false testimony' ": "the rule seems to be well settled that although the opponent is not permitted to adduce extrinsic evidence that a witness lied on a previous occasion, he may nonetheless ask questions to that end." *Walker v. Firestone Tire & Rubber Co.*, 412 F.2d 60, 63–64 (2d Cir. 1969); *see id.* ("While a witness' testimony regarding collateral matters – here an unrelated trial – may not be refuted by calling other witnesses or by production of extrinsic evidence, there is nothing improper in asking questions relating to extrinsic matters in the hope of undermining the witness'[s] credibility."); *see also United States v. Terry*, 702 F.2d 299, 316 (2d Cir. 1983) ("Proof that a judge . . . before whom [the witness] had testified as an expert had found that [the witness] had 'guessed under oath' was probative of the weight to be accorded to his testimony."); *United States v. Whitehead*, 618 F.2d 523, 529 (4th Cir. 1980) (approving cross-examination of lawyer-defendant under Fed. R. Evid. 608(b) regarding both conduct underlying suspension of his law license and suspension itself). *But see United States v. Cruz*, 894 F.2d 41, 43 (2d Cir. 1990) (excluding cross-examination regarding earlier judicial finding in unrelated case that witness lacked credibility because of limited probative value). Furthermore, as both parties note, we have previously observed – in the context of assessing the government's *Brady* violation – that cross-examination of a witness about past false statements he made under oath would be proper under Fed. R. Evid. 608(b) as an instance of the witness's conduct probative of untruthfulness. *United States v. Cuffie*, 80 F.3d 514, 517 (D.C. Cir. 1996).

Relying on our holdings in *United States v. Morrison*, 98 F.3d 619, 628 (D.C. Cir. 1996), and *Bowie*, 198 F.3d at 911, the government nevertheless contends that the probative value of the proposed cross-examination was limited because the judge's finding "more closely resembles a mere complaint . . . or a ruling that the testimony of opposing witnesses [was] more credible, whose probative value is hard to know." Appellee's Br. at 37 (internal quotations omitted). Hardly. The government's attempt to analogize the judge's simple and direct statement – "I think [Officer Soto] lied" – to an unsubstantiated civil complaint, *see Morrison*, 98 F.3d at 628, or to a judge's suppression of evidence because he found "defense witnesses more credible than" the government's witness, *see Bowie*, 198 F.3d at 907, is strained at best. Furthermore, the government's suggestion that inquiry under Fed. R. Evid. 608(b) should be limited to a prior perjury conviction would make Fed. R. Evid. 609 superfluous. Fed. R. Evid. 608(b) allows a witness's credibility to be attacked based on misconduct that, while not constituting a criminal conviction, nevertheless tends to show that the witness is untruthful. *See United States v. Bagaric*, 706 F.2d 42, 65 (2d Cir. 1983) (allowing cross-examination of witness regarding negative credibility determination by another judge under Fed. R. Evid. 608(b) because "it is clear that the prior misconduct need not have created criminal liability or resulted in a conviction").

Moreover, neither *Morrison* nor *Bowie* supports the district court's total rejection of Whitmore's proposed cross-examination regarding Soto's prior testimony, the judge's finding and the United States's Attorney's Office's subsequent investigation of Soto. In *Morrison* we rejected the defendant's claim that he was entitled to cross-examine a government witness regarding the fact that the latter had been sued in state court, noting that "the mere *filing* of a complaint" – "regardless of whether the allegations in the complaint [were] true" – did not meet Fed. R. Evid. 608(b)'s requirement that cross-examination be confined to conduct that is " 'probative of truthfulness or untruthfulness.' " 98 F.3d at 628 (quoting Fed. R. Evid. 608(b) (emphasis in original)). We did not

address what difference it might have made had the defendant sought to cross-examine the witness about the *substance* of the complaint. And in *Bowie* we reaffirmed – again in the *Brady* context – our statement in *Cuffie* that Fed. R. Evid. 608(b) authorized defense counsel to cross-examine an officer testifying for the government regarding a prior negative credibility determination by another judge in another matter. 198 F.3d at 909 (noting "at a minimum" cross-examination of officer about United States Attorney's ensuing investigation permissible).

We also believe the district court erred in excluding the entire line of cross-examination on the ground that its probative value was substantially outweighed by the risk that the jury might blindly follow the prior judge's lead or be otherwise distracted from the substance of Whitmore's trial. The government relies on the First Circuit's holding in *Lopez* and dicta in *Bowie*[7] to argue the exclusion of any cross-examination about the judge's finding. Yet *Lopez* and the *Bowie* dicta stand only for the general proposition that extensive cross-examination regarding the judge's finding would be overly prejudicial and neither case involved the cross-examination of the government's *key* witness. *Lopez*, 944 F.2d at 38; *Bowie*, 198 F.3d at 910. Furthermore, the *Lopez* court substantially qualified its own holding, noting that its review was "severely hampered by the absence of an offer of proof as to the nature of the intended" cross-examination and that its decision was confined to the circumstances before it. 944 F.2d at 38. The district court here could have adequately guarded against any risk of unfair prejudice or undue delay

---

[7] The *Bowie* court, again in the context of assessing a *Brady* violation involving a prior negative credibility determination by another judge in another matter, included a hypothetical dialogue among the court, the prosecutor and defense counsel about the scope of cross-examination regarding that determination. 198 F.3d 910–11. During the course of that dialogue, the court – relying on *Lopez* and Fed. R. Evid. 608(a) – sustained the prosecutor's objection to defense counsel's inquiry into the reasoning behind the judge's determination, *id.* at 910, a far different scenario from Whitmore's proposed cross-examination.

by limiting cross-examination, *Bowie*, 198 F.3d at 910, by giving limiting instructions to the jury and by setting reasonable parameters on the government's rehabilitation of Soto. *See United States v. Long*, 328 F.3d 655, 662 (D.C. Cir. 2003) (approving use of limiting instructions instead of exclusion of evidence under Fed. R. Evid. 403 in light of "probative strength" of evidence); *United States v. Burch*, 156 F.3d 1315, 1324 (D.C. Cir. 1998) (approving use of "careful limiting instruction" to prevent jury from drawing improper conclusion from evidence). Instead, by prohibiting cross-examination of the only witness who testified to Whitmore's unlawful possession of the gun, we believe the district court abused its discretion.

Turning to the district court's denial of cross-examination regarding Soto's suspended driver's license and failure to pay child support, we also find error. The trial court precluded cross-examination on those matters on the ground that there was "no basis" for the cross-examination because Whitmore's only support for them – the record from the Maryland Motor Vehicle Administration – was inadmissible hearsay. Tr. 234. Counsel, however, need only have " 'a reasonable basis for asking questions on cross-examination which tend to incriminate or degrade the witness,' " and "the general rule in such situations is that 'the questioner must be in possession of some facts which support a genuine belief that the witness committed the offense or the degrading act to which the question relates.' " *United States v. Lin*, 101 F.3d 760, 768 (D.C. Cir. 1996) (quoting *United States v. Sampol*, 636 F.2d 621, 658 (D.C. Cir. 1980), and *United States v. Fowler*, 465 F.2d 664, 666 (D.C. Cir. 1972)). The copy of Soto's Maryland driving record provided sufficient basis for such cross-examination and defense counsel readily acknowledged that he did not seek to admit the record itself and would be bound by Soto's answers. Tr. 234. The court apparently assumed, however, that Soto would simply deny that his license had been suspended, leaving the jury with a bare denial of a damaging accusation. *Id.*; *see United States v. Brooke*, 4 F.3d 1480, 1484 (9th Cir. 1993) (Fed. R. Evid. 608(b) prohibits extrinsic evidence on cross-examination and thus cross-

examiner is "stuck with whatever response" witness gives). We pass over the fact that this assumption implied that Soto would intentionally lie under oath. The court lacked a basis for such an assumption, however, because it failed to conduct any voir dire. *See United States v. Crowley*, 318 F.3d 401, 417–18 (2d Cir. 2003) (no abuse of direction in prohibiting relevant cross-examination under Fed. R. Evid. 608(b) because district court knew from brief voir dire of witness that witness would deny allegations). The knowledge that he could be charged with perjury would encourage Soto to respond truthfully, even if he thought that Whtimore's counsel could not impeach him further. Accordingly, in excluding cross-examination on these matters as well, the district court abused its discretion.

3.   Error Not Harmless

Having determined that the district court erred in denying Whitmore the opportunity to cross-examine Soto about past misconduct pursuant to Fed. R. Evid. 608(b) and Fed. R. Evid. 403, we must determine whether the evidentiary rulings constituted harmless error. *See* Fed. R. Crim. P. 52(a) ("Any error . . . that does not affect substantial rights must be disregarded."). There are two different standards of review for harmlessness, "one for non-constitutional errors and one for errors of constitutional dimension." *United States v. Powell*, 334 F.3d 42, 45 (D.C. Cir. 2003). Under both standards, the burden is on the government to demonstrate that the error was harmless. *See United States v. Olano*, 507 U.S. 725, 734 (1993). Whitmore maintains that the standard of review for constitutional errors – "harmless if it appears 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained' " – applies because he was deprived of his Sixth Amendment right to confront a witness against him. *Powell*, 334 F.3d at 45 (quoting *Chapman v. California*, 386 U.S. 18, 24 (1967)). But we need not decide whether the Sixth Amendment was violated here. Even evaluating the evidentiary rulings under the less rigorous standard of review for non-constitutional misapplications of the Federal Rules of Evidence – whether the error "had a substantial and injurious effect or influence in determining

the jury's verdict," *Kotteakos v. United States*, 328 U.S. 750, 776 (1946) – the government has not met its burden of showing harmless error.

Soto provided the sole and critical eye-witness evidence to support Whitmore's firearm conviction. We are hard-pressed to understand the government's claim that the proposed cross-examination would have "had only marginal evidentiary value," Appellee's Br. at 50, and we cannot ignore the potential impact of such a highly probative attack on Soto's character for truthfulness. *Walker*, 412 F.2d at 64 ("Since virtually the whole of plaintiff's case was based on White's testimony," court's decision to "prohibit[ ] proper impeachment of plaintiff's key witness" "can only be regarded as material and significant" and "required" "a new trial."); *see also Cuffie*, 80 F.3d at 518 (noting in *Brady* context "undisclosed impeachment evidence can be immaterial because of its cumulative nature only if the witness was already impeached at trial by the same kind of evidence").

But the government argues that the court's rulings, if erroneous, were harmless because Soto's testimony was "amply corroborated by the other officers involved in the arrest" and Whitmore's "defense theory was incredible." Appellee's Br. at 48–50. The government finds no safe harbor in either argument. First, the fact that Officer Russell testified that Whitmore ran when confronted by Russell is of little importance in light of the cocaine base he was carrying. That another officer testified the gun showed signs it had been recently thrown against the wall of a nearby building does not say anything about who threw it. There were no fingerprints on the weapon.[8] In fact, the only independent piece of evidence corroborating Soto's testimony connecting Whitmore to the gun was Russell's testimony that Whitmore was holding the right side of his jacket as he fled. Standing alone, this evidence would hardly sustain Whitmore's conviction. Under these circumstances, the government has not shown that a reasonable jury would have put aside relevant, im-

---

[8] It had apparently been wrapped in rubber bands to prevent identification.

peaching evidence about the government's key witness and reached a similar verdict had it heard the excluded cross-examination. *See United States v. Foster*, 982 F.2d 551, 556 (D.C. Cir. 1993) (restricted cross-examination of key government witness who identified defendant not harmless where little corroborating testimony).

Relying on our recent decision in *United States v. Powell*, 334 F.3d at 46, the government argues that no reasonable juror could have accepted Whitmore's theory that Soto "carried a spare fingerprint-free firearm, which he used to frame [Whitmore], whom he had no idea why he was chasing, and claimed to have seen appellant throw the gun rather than simply to have found it in [Whitmore]'s pocket." Appellee's Br. at 49. This case is a far cry from *Powell*, however, in which the plausibility of the defendant's theory was only one of several factors all weighing in favor of harmless error, including that the alleged error (admissibility of a witness's prior consistent statement) did not cause the defendant "perceptible prejudice." 334 F.3d at 46. Moreover, in *Powell* we noted that to accept the defense theory that the police planted evidence, the jury would also have had to believe that the officer brought along "an extra jacket and gun" and was "waiting for the appearance of a coatless subject upon whom they might be foisted." 334 F.3d at 46. Here, competing theories about the case are matters for a jury's consideration.

## III.   CONCLUSION

For the foregoing reasons, we conclude the district court committed reversible error in prohibiting the cross-examination of Officer Soto as set forth above. The cumulative effect of prohibiting all three proposed lines of cross-examination was to deprive Whitmore of any genuine opportunity to challenge the credibility of the only witness who testified that he possessed the gun in question. We cannot conclude that the error was harmless. We therefore vacate the judgment of conviction under 18 U.S.C. § 922(g)(1) (felon in possession of a firearm) and remand for a new trial on that charge. Whitmore's conviction under 21 U.S.C. § 844(a)

(simple possession of a controlled substance) remains unaffected. Because Whitmore's sentencing challenge is predicated on his firearm conviction, we need not address it.

*So ordered.*